[No. 2009] .

# W. J. DOUGLASS (AS TRUSTEE), APPELLANT, v. THOMPSON, MOREHOUSE & THOMPSON, RESPONDENTS.

1. APPEAL AND ERROR—NOTICE OF APPEAL—FORM.
    While it is better practice to direct notice of appeal to all of the parties who, under any circumstances, might have adverse interests on the appeal, under the statute, if notice be served upon the adverse parties, it is sufficient.

2. APPEAL AND ERROR—NOTICE OF APPEAL—TIME.
    Where it is provided by statute that an appeal is taken by the filing and service of a notice of appeal, but that an appeal shall not be effectual unless an undertaking thereon is filed within five days thereafter, the failure to file the undertaking within the time prescribed does not prevent the filing of a new notice with an undertaking thereafter, providing the time to appeal has not expired.

3. MORTGAGES — MORTGAGEE IN POSSESSION — ACTION FOR RENTS — COMPLAINT.
    A complaint for the collection of rents alleged that a deed, absolute in form, was given to plaintiff by a bank, and that plaintiff gave back to the grantor a written declaration that the premises were held as security for the repayment of money deposited in the bank by plaintiff and by another depositor; that, as part of the arrangement, it was agreed that plaintiff should have possession of the premises and the rentals thereof; and that plaintiff thereafter took possession, and notified defendants of the transfer. Held, that the complaint was based on the theory that plaintiff was a mortgagee in possession, not by virtue of the conveyance, but under an independent agreement therefor which had been executed, so that evidence of plaintiff's entry into possession after the date of the deed and the defeasance was improperly rejected.

4. EVIDENCE — PAROL EVIDENCE — DELIVERY OF POSSESSION — AGREEMENTS.
    An executed oral agreement to deliver the possession of mortgaged property is valid, and such agreement, whether made at the time of the execution of the mortgage or subsequent thereto, is an agreement independent of the mortgage, and cannot be regarded as an oral agreement, varying or contradictory to the terms of a contract in writing.

APPEAL from the Seventh Judicial District Court, Esmeralda County; *Peter J. Somers*, Judge.

Action by W. J. Douglass, as Trustee, against J. S. Thompson and others. Judgment in favor of defendants, and plaintiff appeals. **Reversed.**

The facts sufficiently appear in the opinion.

*McIntosh & Cooke,* for Appellant:

The word "recover," as used in section 5520 of the Revised Laws, relating to mortgages, has reference to an action at law. (*Jackson* v. *Lodge,* 36 Cal. 28; *Norton* v. *Winter,* 62 Am. Dec. 297; *Atchinson* v. *Owensboro,* 71 S. W. 864; 27 Cyc. 1237; 34 Cyc. 763-4; Black's Law Dict. 1006; 24 Am. & Eng. Ency. Law, 211.)

The general rule undoubtedly is that it is entirely competent for the parties to a mortgage to make an arrangement as to the possession or right of possession of the mortgaged premises other than that which the law would determine in the absence of an agreement. (27 Cyc. 1237, note 65, and cases cited; *Dutton* v. *Warschauer,* 21 Cal. 609.)

The agreement for possession may be made by a separate agreement given at the same time with the mortgage. (27 Cyc. 1237, note 67, citing *Clay* v. *Wren,* 34 Me. 187; *Fogarty* v. *Sawyer,* 17 Cal. 589.)

Agreement for possession may be made by a parol agreement contemporaneous with the mortgage or subsequent to it. (27 Cyc. 1237, note 68, citing *Brundage* v. *Home Sav. Assn.,* 39 Pac. 666; *Edwards* v. *Wray,* 12 Fed. 42.)

Possession taken by consent of the mortgagor or under an agreement gives the mortgagee the rights of a mortgagee in possession. (*Jones* v. *Rigby,* 43 N.W. 390; *Brundage* v. *Bank,* 39 Pac. 666; *Spect* v. *Spect,* 26 Pac. 203; *Fogarty* v. *Sawyer,* 17 Cal. 589; *Railroad Co.* v. *Moore,* 121 U. S. 558; *First Nat. Bank* v. *Bell M. Co.,* 19 Pac. 403; *Johnson* v. *Sherman,* 15 Cal. 287, 76 Am. Dec. 481; *Jackson* v. *Lodge,* 36 Cal. 28; *Barrett* v. *Timberlake,* 57 Mo. 499; *Rice* v. *Ry. Co.,* 24 Minn. 464; *Bullion and Exchange Bank* v. *Otto,* 59 Fed. 256; *Cook* v. *Cooper,* 22 Pac. 945, 78 L. R. A. 273, 22 Am. St. Rep. 314; *Kelso* v. *Norton,* 70 Pac. 896; *Rogers* v. *Benton,* 38 N. W. 755, 12 Am. St. Rep. 613; *Stouffler* v. *Harlon,* 74 Pac. 610; *Hopper* v. *Young,* 74 Pac. 140; *Yingling* v. *Redwine,* 69 Pac. 810; *Becker* v. *McCrea,* 94 N. Y. 20; *Howell* v. *Leavitt,* 95 N. Y. 617; 20 Am. & Eng. Ency. Law, 1004.)

The foregoing establishes the legal proposition that under our statute a mortgagor may agree to deliver possession to mortgagee, and it is utterly immaterial whether in point of time, such agreement is contemporaneous with the mortgage transaction or subsequent thereto. There is absolutely no room for any question of public policy, and its attempted application is absurd.

*Thompson, Morehouse & Thompson,* for Respondents:

The appeal should be dismissed. All adverse parties were not served with notice. (*Ford* v. *Truman,* 89 Pac. 1071; *Harper* v. *Hildreth,* 99 Cal. 268; *Anderson* v. *Red M. Co.,* 93 Pac. 44; *Kramer* v. *March,* 90 Pac. 583; *Vaught* v. *Bank,* 111 Pac. 214.)

The filing and service of the notice of an appeal was an appeal. The law nowhere gives the right of a new notice. If the plaintiff dismiss, that ends his right. (*West* v. *Dygert,* 92 Pac. 753; *Bard* v. *Wilson,* 102 Pac. 301.)

The whole tenor of the complaint is that he owns the property, and that Lockhart, as receiver, sets up a claim to the property and that such claim of ownership on the part of Lockhart is without right—a plain action to quiet title against Lockhart—an action which could not be maintained at all, as a mortgagee in possession, because by section 3343 of the Compiled Laws there is but one action "for the enforcement of any right secured by mortgage or lien upon real estate or personal property" which is an action of foreclosure.

His only remedy, whether mortagee in possession or out of possession, as a mortgagee, is an action to foreclose the mortgage. Therefore, by this complaint, the plaintiff must stand or fall upon an absolute ownership of the premises as a grantee and not as a mortgagee. The very moment it appears in proof that he is not an absolute grantee, but a mortgagee, his action falls, and he is out of court, against Lockhart as receiver, and against Thompson, Morehouse & Thompson, as his tenants by virtue of his ownership as a grantee—the

only ownership he can rely upon in this action—and all testimony of mortgagor and mortgagee, or any such relation, is wholly incompetent. (*Hyman* v. *Kelly,* 1 Nev. 179.)

As plaintiff has not sued as a mortgagee to foreclose his mortgage, these defendants could not attorn to him, as landlord, and become his tenants. (Jones on Mortg., 5th ed. sec. 777, p. 741; Taylor, L. & T., 9th ed. sec. 180; Comp. Laws, 2686.)

The issue, therefore, was title in the plaintiff and · tenancy of these defendants. The moment the transaction becomes a mortgage plaintiff's action fails because plaintiff could not be the landlord of these defendants, as he alleges. (*Warnock* v. *Hareon,* 96 Cal. 298; *Emerson* v. *Weeks,* 58 Cal. 439; *Ramivex* v. *Murray,* 5 Cal. 222.)

Now, however, later on plaintiff gives up the absolute character of the deed, and seeks to change his cause of action, and says: "So far as the defendants Thompson, Morehouse & Thompson are concerned, the action is not based upon any mortgage relation, but is based upon our being a mortgagee in possession and entitled to collect the rents, and, if they are not paid without suit, then to sue for them and invoke the process of law."

Here is a cause of action wholly different from the one upon which we are sued. Here there is no relation of tenancy at all. They seek now, as agents or bailees of the bank, to sue upon the rights of the bank as landlord. (Jones on Mortg., sec. 1115, 5th ed.; *Hubbell* v. *Moulson,* 53 N.Y. 225.)

As the mortgagee's only remedy is foreclosure and sale, he is never entitled to the rents and profits until a decree of foreclosure, when, by the decree on an accounting, he is allowed to apply the same on the mortgage debt. Until such decree the rents belong absolutely to the mortgagor. This principle of law is elementary and is the rule both at common law and under the statutes. (Jones on Mortg., sec. 775, 5th ed.)

The complaint alleges: "and as part of the agreement." Now the agreement was in writing, and is attached to

the complaint as "Exhibit B," and in that agreement there is not a word about plaintiff having possession of the premises or the right to collect the rents, or any transfer of rents at all. The agreement, being in writing, interprets itself. Oral evidence is not admissible to change it. There is no ambiguity, no indefiniteness, in the contract. It is complete, intelligible, and perfect. The rule is elementary that when there is no mistake or fraud alleged in the complaint, and no uncertainty or ambiguity in the contract, that no evidence is admissible of a different term or understanding of the contract, or of a contemporaneous separate agreement. (*Johnson* v. *D. H. B. L. Co.*, 73 Pac. 730; *Beall* v. *Fisher*, 95 Cal. 568.)

The averment of a contract for possession and rents, as "part of the agreement," cannot be proved, and is surplusage and nugatory in the complaint. (*Nanneberg* v. *Young*, 44 N. J. L. 331.)

The complaint does not plead a separate and distinct contract, nor a subsequent contract, but as "part of the same contract." Therefore, to admit oral testimony of the kind alleged in the complaint adds something to the written contract. (*Travis* v. *Epstein*, 1 Nev. 116; *Grey* v. *Bisbend*, 41 Cal. 322; *Bradford* v. *Joost*, 117 Cal. 209; 2 Parsons on Contracts, 8th ed. star p. 548.)

Under Comp. Laws, 3357, the mortgagor could not agree to the possession of the mortgagee, except by foreclosure and sale, because such an agreement was contrary to the policy of our law, and certainly could not so agree, in the mortgage transaction itself. (Pomeroy, Eq. Juris., sec. 1193; *Teal* v. *Walker*, 111 U. S. 242; *Couper* v. *Shirley*, 75 Fed. 168; *Hazleton* v. *Granger*, 44 Mich. 503; *Brundage* v. *Bank,* 39 Pac. 666; *Norfor* v. *Busby*, 53 Pac. 715; *Wagner* v. *Stone*, 36 Mich. 364; *Thompson* v. *Shirley*, 69 Fed. 484; *Freeman* v. *Campbell,* 109 Cal. 360.)

By the Court, NORCROSS, J.:

This is an action by the plaintiff, appellant herein, to recover a judgment for rents alleged to be due and owing to plaintiff from the defendants Thompson, Morehouse & Thompson on account of the use and occupancy of

certain office rooms in a certain building in the town of Goldfield known as "the Nye and Ormsby County Bank Building," and to quiet plaintiff's right or title to said rents as against the other defendants, Lockhart and Gilbert. From a judgment entered upon a nonsuit in favor of these defendants, Thompson, Morehouse & Thompson, as against the plaintiff, the latter has appealed.

Counsel for respondent have moved to dismiss the appeal upon the ground that this court is without jurisdiction thereof for the reason that all of the adverse parties to the suit were not made parties to the appeal, and for the further reason that there is no valid notice or undertaking. The notice of appeal was directed only to the defendants Thompson, Morehouse & Thompson, but the notice was served upon the counsel of record for the other defendants in the action. The interests of defendant Gilbert upon the appeal can hardly be considered as adverse to those of the plaintiff, and, as to him, service of the notice may not have been necessary. It appears that, after the judgment and before the taking of the appeal, a change had been made in the receivership of the Nye and Ormsby County Bank, but no substitution had been made in the case. Service of the notice of the appeal was made upon counsel, both for the receiver as named in the proceedings and his successor.

[1] There is no prescribed statutory form for a notice of appeal. While a better practice doubtless would be to direct the same to all of the parties in the action who might under any possible circumstances be deemed to have any adverse interests upon the appeal, nevertheless all that the statute requires is that the notice be served upon the adverse parties. The objection as to the form of the notice and sufficiency of the service is not well taken.

[2] A notice of appeal dated November 21, 1911, was filed November 22, 1911, and service thereof acknowledged upon the following day. No undertaking upon appeal was filed within five days thereafter. On November 29, 1911, a second notice of appeal was filed and

served, and within five days thereafter an undertaking upon appeal was filed. The second notice of appeal and the undertaking were filed within the time prescribed by law for taking· appeals from final judgments. It is the contention of counsel for respondent that the plaintiff has lost his right to appeal by failing to file an undertaking within five days after filing the first notice of appeal; that no other valid notice could be therefor filed. If this contention is correct, this court would of course be without jurisdiction, and the appeal should be dismissed.

It is provided by statute that an appeal is taken by the filing and service of a notice of appeal, but that an appeal shall not be effectual for any purpose unless an undertaking thereon is filed within five days thereafter. Failing to file the undertaking within the prescribed time renders the notice of appeal ineffectual, but we see no reason why a new notice may not thereafter be filed, providing time for appeal has not expired. (*Columbet* v. *Pacheco*, 46 Cal. 650, 651; *Vordermark* v. *Wilkinson*, 147 Ind. 59, 46 N. E. 336; *Bornheimer* v. *Baldwin*, 42 Cal. 27; *Holladay* v. *Elliot*, 7 Or. 483; 2 Cyc. 529, 530.) The complaint, among other matters, alleges: "That on said February 5, 1909, said Nye and Ormsby County Bank duly made, executed, and delivered to plaintiff a deed of conveyance absolute of said premises. * * * That thereafter, on or about February 6, 1909, said plaintiff executed and delivered to said Nye and Ormsby County Bank, and to said defendant, R. F. Gilbert, a certain instrument in writing, declaratory of the conditions under which the title of said lot and building was held by plaintiff. * * *" The instrument last referred to is attached to the complaint as an exhibit, and reads as follows "Whereas, W. J. Douglass, as the manager and secretary of the Midway Mining Company, has deposited with the Nye and Ormsby County Bank, a corporation, certain moneys belonging to and the property of said Midway Mining Company, for the safe-keeping of which moneys said W. J. Douglass is primarily liable,

and, whereas, R. F. Gilbert, county treasurer of Nye County, Nevada, as such treasurer has deposited with the said Nye and Ormsby County Bank, a corporation, certain moneys belonging to the county of Nye, which moneys came into possession of said Gilbert as county treasurer, and for the safe-keeping of which moneys said Gilbert and his bondsmen on his official bond are primarily liable, and, whereas, said Nye and Ormsby County Bank has, by a deed absolute in form, conveyed to said W. J. Douglass certain property in Goldfield, Esmeralda County, Nevada, known as the First National Bank building, together with the real estate on which the same is situated, the purposes for which said property was so conveyed to W. J. Douglass being that he hold the same as security for the repayment to him and to said R. F. Gilbert, as county treasurer, of all moneys deposited by them with said Nye and Ormsby County Bank, and for the complete protection of said W. J. Douglass and R. F. Gilbert, as county treasurer, and his bondsmen. Now, therefore, said W. J. Douglass agrees to hold said property so conveyed to him for the uses and purposes above set forth, and further agrees to reconvey said property to said Nye and Ormsby County Bank when said uses and purposes have been performed and accomplished. [Signed] W. J. Douglass." The complaint further alleges: "That on or about said February 5, 1909, and as a part of the agreement so aforesaid entered into for the conveying of said premises to plaintiff, it was also agreed by and between said Nye and Ormsby County Bank, the defendant R. F. Gilbert, and plaintiff herein, that the actual and exclusive possession and right of possession, together with all rents, issues and profits, of all and singular the said premises should be, and the same were then and there, surrendered, set over, transferred and delivered to plaintiff, and that all leases and all rentals accrued or accruing, or thereafter to accrue, from said premises, including the amount due from the defendants Thompson, Morehouse & Thompson, as hereinafter stated, were duly surrendered,

assigned, transferred and set over by said defendant Nye and Ormsby County Bank to plaintiff. That thereupon said plaintiff entered into and took the quiet and peaceable possession of said premises, and ever since had held and now holds the actual and exclusive possession thereof, subject to any valid and subsisting leases, and that said defendants Thompson, Morehouse & Thompson were duly notified of said conveyance and assignment on or about said February 6, 1909."

Plaintiff offered to prove that a few days after February 6, 1909, and prior to March, 1909, the Nye and Ormsby County Bank, through its authorized officers, and while still doing a banking business, agreed with plaintiff that he should take absolute and exclusive possession of the building in question, with the right to collect all rents, and that plaintiff was at that time placed in actual possession thereof; that plaintiff at once notified the tenants and collected some rents from respondents Thompson, Morehouse & Thompson, who paid said rents with knowledge that plaintiff was in possession. Objection was made to this offer upon the ground that a mortgagor, for reasons of public policy, cannot make a valid agreement of the kind sought to be proved. The objection was sustained upon the ground that such an agreement would be invalid as contrary to the public policy of the state as expressed in Compiled Laws, section 3357. Objections to a number of questions propounded to the plaintiff and other witnesses for the purpose of showing the alleged agreement and plaintiff's entry into the possession of the building in question in pursuance thereof, with the knowledge and approval of the officers of the Nye and Ormsby County Bank, were for the same reasons sustained. Objection was also sustained to the offer to prove an agreement and entry of possession and assignment to the plaintiff of the rents and profits of the building at any time subsequent to the 5th day of February, 1909, upon the ground that such proof was not within the issues made by the pleadings. A request to amend

the complaint so as to obviate the latter objection was
denied upon the ground that it would introduce a new
and separate cause of action.   Section 3357 of Cutting's
Compiled Laws, upon which the court based its rulings,
reads: "A mortgage of real property shall not be deemed
a conveyance, whatever its terms, so as to enable the
owner of the mortgage to recover possession of the real
property without a foreclosure and sale."   (Rev. Laws,
5518.)   In ruling upon certain of the objections to testi-
mony, the position of the trial court as to the law of the
case was stated as follows: "The complaint sets forth
that it is by virtue of said deed, which must be construed
to be a mortgage, that the claim against Thompson,
Morehouse & Thompson in behalf of Douglass arises;
that the making of said deed of transfer in effect con-
stitutes, among other things, an assignment of rents
due and to become due. * * * Concerning the authori-
ties cited by the learned counsel for the plaintiff in this
case, it must be said that they relate to cases where the
mortgage itself, or conveyance, is not relied upon to
convey the rents.   They depend wholly upon subsequent
transactions to the making of the mortgage.   It is held
by those authorities, and properly so, that, at a time sub-
sequent to the making of the mortgage, the mortgagee
may take possession with the consent of the mortgagor,
without violating the policy of the statute; and to that
effect the parties may make a subsequent contract.   But
in the case at bar it is the deed itself, construed as a
mortgage, which is relied upon as assigning the rents
and authority to collect the same.   I am of impression
that this conveyance does not transfer the rents, issues,
and profits of the tenement in question, and that, under
the complaint, testimony of the character offered cannot
be received against the defendants Thompson, More-
house & Thompson, or against the receiver. * * * Of
course if the Nye and Ormsby County Bank gave Mr.
Douglass permission to enter upon the premises after the
mortgage was due, then Douglass would be a mortgagee
in possession, with the consent of the mortgagor; that

consent would be subsequent to the mortgage, and would not be a part of the terms thereof, and section 3357 of the Compiled Laws would not apply. Under the complaint in this action, we are satisfied that the testimony offered is not admissible, and therefore we sustain the objections to it.

[3] We think the court took an erroneous view of the complaint as setting forth the basis of the plaintiff's cause of action. We do not think it can properly be said, from the complaint itself, that the plaintiff rests his right of recovery upon the deed of February 5, 1909. It is clear from the allegations of the complaint that the deed in question is a trust deed in the nature of a mortgage, or should be regarded simply as an ordinary mortgage for the security of a debt. The contention found in respondent's brief that "there is no claim of any kind that the transaction was a mortgage, or that he took possession or had any agreement to do so, as a mortgagee in possession," is, we think, entirely without support. It follows, as a matter of law, from the allegations in the complaint, that the deed is in effect a mortgage. The court below very properly assumed it to be a mortgage, and such was the contention of the plaintiff. Plaintiff's right of recovery, as we view the complaint, is based on the theory that he is a mortgagee in possession. Such possession and right of possession is not primarily based upon any provision found in the deed or in the written agreement set out in the complaint setting forth the terms and conditions under which the deed was executed and controlling the provisions thereof, but upon an independent agreement made at the time or subsequent thereto, the terms of which are set out in the complaint and quoted *supra*. Whether this latter alleged agreement can be enforced is the question presented upon this appeal. If an executory agreement to deliver possession only were alleged, and the action was to enforce such executory agreement to deliver possession as against the Nye and Ormsby County Bank, a different question

might be presented, one which we are not now called upon to determine. But it is alleged that the agreement to deliver possession was executed; that, in accordance with the agreement, the plaintiff "entered into and took the quiet and peaceable possession of said premises, and ever since had held and now holds the actual and exclusive possession thereof."

Our statute (Rev. Laws, 5518, quoted *supra*) was taken from the statutes of California. Considering a similar section found in the Montana code, the Supreme Court of the United States, in an opinion by Field, J., said: "The object of the provision of the three hundred and seventy-first section of the statute of Montana and of the similar law of California, from which it was taken, was to preclude any arrangement between the mortgagor and the mortgagee by which the former's right to the property could be cut off without a sale of the same. It therefore held that the mortgage should not operate as a conveyance, whatever its terms, until a foreclosure and sale. The foreclosure might be by judicial proceedings in equity or by any other regular proceedings which resulted in extinguishing the mortgagor's right of property by sale. * * * In the case of *Fogarty* v. *Sawyer,* 17 Cal. 589, 592, the instrument under which the property conveyed was intended as security and to be sold by the trustees named upon breach of its condition for payment. It was similar in form to the indenture under consideration in this case, and the court said: 'Under the section (260 of the Practice Act of California referred to), the mortgage creates a mere lien for the purposes of security, and, as in other cases of lien upon real property, can only be enforced by judicial proceedings, except by the authority of the owner of the property. By virtue of the mortgage alone the mortgagee neither acquires the possession nor disposes of the premises, but the existence of the mortgage does not prevent the owner from making an independent contract for the possession, or from authorizing

a sale of the premises, the mortgagee consenting thereto, to pay off the debt. Nor is it perceived that there is any legal obstacle to making such contract with the mortgagee or to clothing him with the power of sale. If the owner of the property sees fit to enter into such an arrangement with him, or to confer such power upon him, it would be going a great way for the court, for that reason alone, to invalidate the proceedings. The right to dispose both of the possession and estate follows necessarily from the ownership of the property, and, this being so, no valid objection can be urged against incorporating the contract and power in the same instrument with the mortgage. They do not become in that way any part of the mortgage, but are as much independent of it as though contained in separate instruments. Some stress is placed by the respondent upon the use of the words "whatever its terms" in the statute. This language is supposed to prohibit separate stipulations between the parties for the possession and for the sale of the premises upon default. We do not thus construe the language, but, on the contrary, are clear that it was only intended to control the terms of grant, bargain, and sale generally employed in mortgages.' We agree to what is stated by the court in that case. There is nothing in the law of mortgages, nor in the law that covers what are sometimes designated as trust deeds in the nature of mortgages, which prevents the conferring by the grantor or mortgagor in such instrument of the power to sell the premises described therein upon default in payment of the debt secured by it, and, if the sale is conducted in accordance with the terms of the power, the title to the premises granted by way of security passes to the purchaser upon its consummation by a conveyance." (*Bell Mining Co.* v. *First Nat. Bank*, 156 U. S. 470, 15 Sup. Ct. 440, 39 L. Ed. 497.)

In *Kelso* v. *Norton*, 65 Kan. 778, 70 Pac. 896, 93 Am. St. Rep. 308, the court said: "At common law a mortgagee was entitled to possession and to recover possession from the mortgagor upon condition broken. In this state, by force of statute, a mortgage retains but

few, if any, of its common-law attributes. It is a mere
security contract, incident to the debt. The mortgagor,
both before and after default, is entitled to the posses-
sion of the premises. The only legal right of the mort-
gagee is to foreclose the equity of redemption and obtain
a decree of sale in satisfaction of his debt. While such
are the legal rights of the mortgagor and mortgagee
in this state, it does not follow that these legal rights
may not be changed or waived by agreement, express or
implied. If the mortgagor consents to the mortgagee's
taking possession of the premises for the better security
of his debt, and the mortgagee does take possession, it
is clear that the possession thus taken will constitute
'a mortgagee in possession.' "

In *Spect* v. *Spect,* 88 Cal. 437, 26 Pac. 203, 13 L. R. A.
137, 22 Am. St. Rep. 314, the Supreme Court of Cali-
fornia said: "The right of the mortgagee to take pos-
session of the mortgaged premises does not depend upon
the statute. The mortgagor could at all times,. even by
a parol agreement, give to his mortgagee this additional
security. (*Fogarty* v. *Sawyer,* 17 Cal. 589; *Edwards* v.
*Wray,* 11 Biss. 251, 12 Fed. 42.) In taking such pos-
session, the mortgagee does not thereby acquire any
estate in the land, or obtain for his mortgage any higher
character, or any different or greater protection than
it would otherwise have possessed. In any action to
enforce the mortgage, or to collect the debt for which
it was given as security, the mortgagee has no additional
rights by reason of the fact that he is in possession of
the mortgaged premises with the consent of the mort-
gagor. Such possession does, however, give him rights
in addition to those conferred by the mortgage. It is
an additional security for the debt, which he is entitled
to retain in accordance with the terms under which it
was received. This right to retain the possession of the
land is not coincident with a right to foreclose his mort-
gage or dependent upon such right, but depends solely
upon the existence of the debt. The possession of the
land is a special security for the debt, distinct and sepa-
rate from the mortgage, which has been conferred by

an act of the debtor, and the right to retain the same is independent of and distinct from any right springing from the mortgage. A mortgage is defined by section 2920 of the civil code to be 'a contract by which specific property is hypothecated for the performance of an act, without the necessity of a change of possession.' The use of the term 'hypothecate' signifies that possession is not an incident of the mortgage, and that the fact of possession is entirely distinct from the contract of hypothecation. When, therefore, in addition to the contract of hypothecation the debtor gives to his creditor the possession of the mortgaged premises, he thereby, in addition to the mortgage which he has executed, also pledges the land to him as security for the debt, and confers upon him such rights as are incident to a pledge. The common law recognized this species of landed security. It was there called *vadium vivum,* as distinguished from the *vadium mortuum.* This is defined by Chancellor Kent to be: 'When the creditor takes the estate to hold and enjoy it without any limited time of redemption and until he repays himself out of the rents and profits. In that case the land survives the debt, and when the debt is discharged, the land, by right of reverter, returns to the original owner.' (4 Kent's Com. 137; 2 Bl. Com. 157; Co. Lit. 205a.) The holding of the land in pledge is like the holding of any other pledge. Until the debt is repaid, the owner of the pledge cannot recover it from the creditor. The holder of personal property given as security for a debt is entitled to retain the same from the owner until the debt is satisfied, even though the statute of limitations has barred all right of action to recover the debt. (*Jones* v. *Merchants' Bank,* 4 Rob. N. Y. 221.) Under the same principle, the mortgagee in possession is entitled to retain such possession until the debt is paid. 'The mortgagee's right being in possession to defend himself against an ejectment by the mortgagor, is but a right to retain the possession of the pledge for the purpose of paying the debt. Such a right is but the incident of the debt, and has no relation to a

title or estate in the lands.' (*Kortright* v. *Cady*, 21 N. Y. 343, 78 Am. Dec. 145.) 'On the same principle that the party who holds goods in pledge for a debt may retain those goods, even after an action at law upon such debt has been barred, the party who has got the rightful possession of land mortgaged may retain possession thereof until his debt is paid, although he can bring no action to enforce the debt.' (*Henry* v. *Confidence M. Co.*, 1 Nev. 622.) In *Dutton* v. *Warschauer*, 21 Cal. 625, 82 Am. Dec. 765, it is said: 'When possession is taken by the mortgagee after condition broken, by consent of the mortgagor, it will be presumed, in the absence of clear proof to the contrary, to be with the understanding that the mortgagee is to receive the rents and profits and apply them to the payment of the debt secured. There is, indeed, no other good reason why the mortgagee should be let into possession in preference to any other party, and, unless a limitation to the period of possession is fixed at the time, it will be considered as extending until the satisfaction of the debt. Having thus entered, the mortgagee can hold against the mortgagor and all others until such satisfaction is obtained.' "

Hawley, J., delivering the opinion of the court in the case of *Bullion and Exchange Bank* v. *Otto* (C. C.), 59 Fed. 256, said: "It is claimed that the oral agreement of M. E. Spooner with the bank to deliver the possession of the real estate was within the statute of frauds. But the question is not whether the oral agreement could have been enforced if M. E. Spooner had refused to deliver the possession. The statute only affects the parties to the agreement. The facts are that M. E. Spooner delivered the possession to Marshall for the mortgagee, and, the agreement having been executed, it is valid between the parties. The defendants are certainly not in a position to urge the statute of frauds as a defense to this suit. (*Book* v. *Mining Co.*, 58 Fed. 106.) The right to make such an oral agreement is well settled, and the effect of such an agreement, and of the possession taken thereunder, is clearly and correctly

stated in *Spect* v. *Spect,* 88 Cal. 440, 26 Pac. 203, 13 L. R. A. 137, 22 Am. St. Rep. 314."

[4] An executed oral agreement to deliver the possession of the mortgaged property is valid. Such agreement, whether made at the time of the execution of the mortgage or subsequent thereto, is an independent agreement and no part of the mortgage. (*Fogarty* v. *Sawyer, supra; Bell Mining Co.* v. *First Nat. Bank, supra.*) The fact that the plaintiff alleged that the agreement to deliver possession of the mortgaged premises was "a part of" the other agreements alleged and which were in writing is, we think, immaterial. It may have been a part of the transactions which involved the giving of the mortgage, but, strictly and legally, it was an independent agreement. Even if made contemporaneous with the mortgage, the agreement to deliver possession cannot be regarded as an oral agreement varying or contradictory to the terms of a contract in writing, for the reason that it is an independent agreement. (*Travis* v. *Epstein,* 1 Nev. 116.)

We think it was competent for the plaintiff to show that he had entered into the possession of the property described in the deed of February 5, 1909, with the consent of the Nye and Ormsby County Bank, and that the court committed prejudicial error in sustaining the objections to the evidence offered. If plaintiff could show that he had acquired possession of the property with the consent of the mortgagor, then he became a mortgagee in possession and entitled to the rights that accrue to a mortgagee in possession. In addition to the authorities quoted, *supra,* we cite the following as sustaining our conclusions: *Brundage* v. *Bank,* 11 Wash. 288, 39 Pac. 669; *Jones* v. *Rigby,* 41 Minn. 530, 43 N. W. 390; *Rogers* v. *Benton,* 39 Minn. 39, 38 N. W. 765, 12 Am. St. Rep. 613; *Teal* v. *Walker,* 111 U. S. 242, 4 Sup. Ct. 420, 23 L. Ed. 415; *Cooke* v. *Cooper,* 18 Or. 142, 22 Pac. 945, 7 L. R. A. 273, 17 Am. St. Rep. 709; *Stouffer* v. *Harlan,* 68 Kan. 135, 74 Pac. 610, 64 L. R. A. 320, 104 Am. St. Rep. 396; *Cummings* v. *Cummings,*

75 Cal. 434, 17 Pac. 442; *Keeline* v. *Clark,* 132 Iowa, 360, 106 N. W. 257; *Benton Land Co.* v. *Zeitler,* 182 Mo. 251, 81 S. W. 193, 70 L. R. A. 94; *Huguley* v. *Galeton Cotton Mills,* 94 Fed. 269, 36 C. C. A. 236; 27 Cyc. 1237, 1250; Jones on Mortgages, 6th ed. sec. 702.

We think the evidence offered was within the pleadings as framed, and that an amendment was unnecessary. However, we need not consider the alleged error in the refusal of the court to permit an amendment. It is further contended that the court erred in granting the motion for a nonsuit for the reason that the court had admitted some evidence showing that the plaintiff was in possession as mortgagee, but, as the judgment must be reversed for the erroneous rulings as to evidence offered, it will not be necessary to determine this question.

Judgment is reversed and cause remanded for a new trial.

SWEENEY, C. J., did not participate in the foregoing decision.